Jerry W. BANG, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–90–327–CR.

Court of Appeals of Texas, Corpus Christi.

Aug. 29, 1991.

Joseph Garcia, Portland, for appellant.

Thomas L. Bridges, Sinton, for appellee.

Before NYE, C.J., and SEERDEN and KENNEDY, JJ.

## OPINION

SEERDEN, Justice.

A jury found appellant guilty of burglary, and the trial court assessed punishment at ten years in prison, probated. We reverse the judgment of the trial court and remand for new trial.

In his first point of error, appellant challenges the sufficiency of the evidence. In reviewing the sufficiency of the evidence, an appellate court views the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Baugh v. State*, 776 S.W.2d 583, 585 (Tex.Crim.App.1989).

The evidence established that on Monday night, March 27, 1990, the Church/School of the New Testament in Ingleside was burglarized. Euell Price, the secretary-treasurer of the church/school, testified that six speakers, two guitars, and various other pieces of equipment were stolen. The building was not open to the public, and no one had been given consent to enter the building or take any equipment. Price further testified that a piece of sheet metal had been unscrewed and removed to provide an opening to the build-

ing. It was left lying on the ground. On the side of the building at the point of entry were painted the initials "J.J.J.," an obscenity, and a satanic symbol. Spray paint and tape were used to disarm the security system.

Several days after the burglary, appellant, Jerry Bang, learned that the police wished to speak with him. He voluntarily went to the police station and gave a written statement to Officer Linda Thompson. He stated that on the day in question, he was at a friend's house in Aransas Pass, when another friend, Jesse Mouton, asked if appellant would take him to Ingleside, a small town located a short distance from Arkanas Pass. Later, at 1:00 a.m., appellant and another friend, Joe Torres, picked Mouton up at his house, and they went to Ingleside where, at Mouton's request, appellant dropped him off at a Whataburger restaurant which was close to Mouton's school. Mouton told appellant to come back and get him in about forty-five minutes. Appellant and Joe Torres drove around Ingleside and then returned to the Whataburger to wait for Mouton. About one hour later, Mouton signaled, and appellant drove to the back of the school building. There, Mouton had an amplifier, some guitar cases, and other items. These items were put in the trunk of appellant's car and taken to another location where Mouton put the items in some bushes on the side of the road. Appellant stated that Mouton never told him why he wanted to go to Ingleside.

At trial, Officer Thompson testified that Jesse Mouton was fourteen years old at the time of the offense. Joe Torres was sixteen. Appellant was twenty-one. Other than appellant's statement, and the testimony of Euell Price and Officer Thompson, the State presented no further evidence to establish that appellant committed the offense.

Appellant testified in his own defense. His testimony was generally consistent with his prior written statement, although in his testimony, appellant offered a reason for going to Ingleside which he had not offered in his statement. He testified that

he did not commit, plan, or agree to commit any burglary at the church. Appellant further testified that Jesse Mouton, who he had known since January, asked him for a ride to Ingleside to pick up some stuff that he owned and had taken out of his school earlier that day. According to appellant, Jesse's reason for retrieving these items in the middle of the night was because he did not want his mother to know that he had quit school.

Appellant further testified that he took Jesse to Ingleside and dropped him off at Whataburger. He saw Jesse walk down the alley past the church/school to a house. Appellant and Joe drove around and then returned to the Whataburger. Jesse never told appellant that he was going to steal anything or burglarize anything. Jesse did not have any tools with him. After about an hour, when Jesse waved to appellant, appellant and Joe drove over, and Jesse told appellant to drive down the alley. Appellant drove fifty to sixty yards past the church, where Jesse had the equipment. Appellant asked Jesse about the equipment, and Jesse said that it was his, that he had it over at a friend's house. Jesse did not act like he was in a hurry to leave. Jesse "loaded up the stuff like, you know, that it was really his." After Jesse got into the car, he told appellant just to drive down Avenue A.

Appellant further testified that he did not see spray paint on the building or anything to indicate that Jesse had spray painted the building or had broken into the building. He testified that it was not unusual for him to be out with two juveniles at 1:00 a.m., or for him to take Jesse to Ingleside in the early morning hours. Appellant did not see anything unusual about Jesse having a pile of guitars, amplifiers, and speakers in the alley although he thought it was "kind of weird" to unload the equipment in some brush, but he did not think anything of it because Jesse did not want his mother to know he was quitting school. Appellant believed it was just a coincidence that the church was painted with three "J's," while he (Jerry), Jesse, and Joe were around the church on the night it was burglarized.

In the present case, the State showed that appellant, an adult, brought two juveniles to the scene of the crime in the middle of the night. Appellant dropped off Mouton, waited about an hour at a nearby location for Mouton's signal, drove to the alley by the church after being signaled by Mouton, picked up the stolen property, and took it to another location where it was hidden in some brush. The State further showed that the initials "J.J.J." were left on the building at the point of entry.

■ Although appellant claimed innocence and offered an explanation for his conduct, the jury was not required to believe his explanation. *See Saxton v. State*, 804 S.W.2d 910, 912–14 (Tex.Crim.App. 1991). Defensive evidence which is merely consistent with the physical evidence at the scene of an alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province, and the jury is free to accept or reject the defensive evidence. *Id.* The jury was entitled to judge appellant's credibility, taking into account the explanation he offered and other facts, such as discrepancies between his trial testimony and statement regarding why Mouton wanted him to go to Ingleside. From the fact that appellant was the only adult involved, the use of appellant's vehicle, the initials sprayed on the building, the time of day, appellant's dropping Jesse at the Whataburger and then waiting at the Whataburger until being signaled, and the hiding of the stolen property in some bushes, any rational juror could have found that appellant participated in the burglary. Appellant's first point of error is overruled.

In his second point, appellant contends that the trial court erred in overruling his request for a mistake of fact instruction. The requested charge would have instructed the jury to acquit appellant if it found that appellant, through mistake, formed a belief that the stolen property was not acquired by the commission of a burglary and that the property belonged to Jesse Mouton.

■ "Mistake of fact" is a statutory defense. Tex. Penal Code Ann. § 8.02 (Vernon 1974). This section provides:

It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

■ "Reasonable belief" means a belief that would be held by an ordinary and prudent man in the same circumstances as the actor. Tex. Penal Code Ann. § 1.07(a)(3) (Vernon 1974).

■ A defendant has the right to an instruction on any defensive issue raised by his own testimony or otherwise. *Miller v. State*, No. 1027-88, 815 S.W.2d 582, 585 (Tex.Crim.App.1991) (Opinion on Rehearing). An instruction should be given regardless of whether the evidence is strong or feeble, unimpeached or contradicted, and even if the trial court is of the opinion the testimony is unworthy of belief. *Miller*, 815 S.W.2d at 585.

The trial court had a duty to instruct the jury on "mistake of fact" if the evidence raised this issue. While some cases have held that a "mistake of fact" charge is unnecessary when the purported mistake fails to meet a reasonableness standard,[1] and others have held that a "mistake of fact" charge is necessary only when the purported mistake is not inconsistent with the elements of the offense[2], the more recent cases require the trial court to give the instruction whenever the evidence raises a "mistake of fact" issue, thereby allowing the jury to decide the credibility of the defense. *See Miller; Willis v. State*, 790 S.W.2d 307, 314 (Tex.Crim.App.1990).

1. *See Hefner v. State*, 735 S.W.2d 608, 623–24 (Tex.App.—Dallas 1987, pet. ref'd); *Smith v. State*, 689 S.W.2d 514, 515 (Tex.App.—Fort Worth 1985, pet. ref'd); *Mata v. State*, 627 S.W.2d 838, 840 (Tex.App.—San Antonio 1982, no pet.).

2. *See Woodfox v. State*, 742 S.W.2d 408, 409 n. 2 (Tex.Crim.App.1987); *Sanders v. State*, 707 S.W.2d 78, 80–81 (Tex.Crim.App.1986).

In the present case, the trial court should have instructed the jury on "mistake of fact" because appellant claimed not to know that by his conduct he was participating in a burglary. When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction on "mistake of fact." *Miller*, 815 S.W.2d at 585; *see Hill v. State*, 765 S.W.2d 794, 796–797 (Tex.Crim.App.1989).

Having found error, we now must decide whether that error was harmless. By applying the harm analysis required by *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim. App.1984), we find that appellant suffered some harm.

The giving of a proper instruction upon timely request and when raised by the evidence in the case simply guarantees the jury the opportunity to make a fully informed decision. *Miller*, 815 S.W.2d at 585. Appellant's defense at trial was that he did not know he was committing burglary. Appellant admitted doing the acts (taking his friends to Ingleside, waiting for his friend at the Whataburger restaurant, loading the equipment into his car, etc.) which the State relied upon to show appellant's culpability in the burglary. Appellant denied, however, that these acts were committed with criminal intent. Because the Penal Code makes "mistake of fact" a statutory defense, appellant was entitled to have the jury specifically rule upon the defense.

Both the State and the defendant are entitled to a fair trial and the defendant is entitled to have his defensive issues considered by the trier of facts. Appellant had the right to have the jury specifically consider the claimed mistake of fact and to determine whether the claimed mistake was factually believable or reasonable. Appellant's second point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.