**James Mark TRAYLOR, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–00–071 CR.**

Court of Appeals of Texas,
Beaumont.

May 2, 2001.

---

* The Honorable Jackson B. Smith, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

Stephen Simonsen, Conroe, for appellant.

Michael A. McDougal, Dist. Atty., Peter C. Speers, III, Asst. Dist. Atty., Conroe, for State.

## OPINION

GAULTNEY, Justice.

James Mark Traylor was convicted of Assault on a Public Servant enhanced by three prior convictions and was sentenced to forty years. He raises two points of error, alleging that the trial court erred in refusing his request for a mistake of fact instruction and in refusing his motion for a new trial based on jury misconduct. We overrule both points of error and affirm Traylor's conviction and sentence.

### BACKGROUND

Traylor's conviction stems from his arrest for a parole violation. On May 28, 1998, some 30 police officers from various jurisdictions converged on a rural homestead where Traylor was living with

friends. In addition to the arrest warrant for Traylor, they brought search warrants for several buildings on the premises. Some of the officers wore conventional uniforms, but the majority wore body armor, raid jackets or T-shirts emblazoned with the name of the agency they were affiliated with, or other "tactical" clothing.

Traylor drove up the driveway to the property while it was under surveillance. A marked animal control truck and two unmarked police cars followed him in from the highway. When Traylor stopped his truck, a van containing eight police officers pulled up behind it to block it in. Montgomery County warrant investigator Newton Ward ran up to Traylor's truck and opened the driver's side door. Traylor initially obeyed Ward's commands to place his hands on the wheel.

However, when Ward holstered his pistol to reach for his handcuffs, Traylor put the truck in gear. With Ward clinging to the steering column, Traylor lurched several feet in reverse; then he began to accelerate forward. Ward's body was caught between the driver's side door and the body of the truck. The truck sideswiped a parked car, crashed through the carport of a mobile home, and then lurched into a field. Ward jumped free at that point and escaped with relatively minor injuries.

Ward was the first police officer to confront Traylor. He posed for the jury while wearing the body armor, badge, and police gun belt that he wore the day of the arrest. The other officers in the van with Ward wore "RAID" jackets and "POLICE" vests, as did most of the other 30 to 35 officers who were pouring onto the property. One witness described the scene as follows:

> The officers on the scene all wore various types of what's commonly known as raid gear. They either had on raid jackets similar to what the bailiff is wearing in the back, or they had on T-shirts, Sheriff's Department, Police Department, Narcotics Task Force, something in big letters that described them as police, along with their bullet proof vests.

Sheriff's Corporal Denise Janeway, who also ran up to Traylor's truck, testified that she was wearing a "RAID" jacket and a uniform gun belt with her badge clipped to the belt. She was carrying a shotgun and shouting "Stop, Police" while looking directly at Traylor. She testified that Traylor was directly in her line of sight, and she in his. She testified that Traylor initially complied with orders to put his hands on the steering wheel, then reached down and threw the truck into gear when Ward holstered his pistol to reach for his handcuffs. Traylor admitted being arrested four times before: the jury could reasonably presume he knew that holstering a gun and reaching for handcuffs were standard procedure for an arrest rather than a robbery; and the jury could reasonably presume he was also aware that carjackers do not operate in eight man teams wearing badges, carrying handcuffs, shouting "Stop, Police," and wearing clothing with big letters describing them as police.

Nevertheless, Traylor testified that he did not realize that Ward was a police officer, and testified that he believed he was fleeing an unknown assailant. Based on this testimony, defense counsel requested that the trial court include self-defense, mistake of fact, and necessity instructions in the jury charge. The court included the self-defense instruction, but denied the mistake of fact and necessity instructions.

### POINT OF ERROR ONE—MISTAKE OF FACT—

In appellant's first point of error, Traylor complains of the trial court's refusal of a requested jury instruction on the defen-

sive issue of mistake of fact. *See* TEX.PE-NAL CODE ANN. § 8.02 (Vernon 1994). He says that he did not know the police were police. He presented this argument to the trial court; but the record is confused with an erroneous written instruction request. We begin by reviewing the charge conference.

The record before us reflects that the parties and the trial court had a discussion on the record regarding the trial court's proposed charge to the jury. During this charge conference, appellant's trial counsel requested an instruction on mistake of fact. It appears from the record that the parties and the trial court were in possession of a copy of Defendant's Exhibit # 200, which was appellant's proposed charge to the jury. The trial court admitted Defendant's Exhibit # 200 into evidence solely for purposes of the charge conference. A portion of the charge conference discussing the written request is as follows:

> [State]: So I don't think he's entitle (sic) to the mistake of fact to begin with because of Gonzales and Myagora and Cooper, but this particular language does not even, in and of it (sic) itself, is not a proper language for a mistake of fact charge.

> [Defense Counsel]: I don't mind amending the language, if that's—

> [State]: But the law, even if you amend the language, the law in that case, this language, even amended, is going to be contrary to that law.

> . . . .

> [Defense Counsel]: In Gonzales, it says at the bottom of 136, "The appellate (sic) urges that the deputy constable was not in the lawful discharge of his official duty because the arrest was without warrant was unlawful." That's not our position at all.

> [State]: But the holding, Your Honor, the holding of Gonzales says that since the statute forbidding the aggravated assault does not recognize the defense of illegality of arrest, even if the defendant's arrest was unlawful, which is what they're containing.

> [Defense Counsel]: No.

> [State]: They're asking, the defendant is not entitled to an instructed verdict.

> [Defense Counsel]: That's not our position. **We're not saying it was because the arrest was unlawful. We're saying that he did not know the identity of the—he did not know they were police officers.** From his point of view, this was just a person, a stranger pointed a gun in his face. He testified he did not know who he was. He did not know it was a police officer, and he ran because he was in fear of his life. If that—if the jury believes that, he's entitled to the defense that we're requesting. I can see we may want to amend some of the language, but I think we have a right to an instruction on mistake of fact, because we're not saying the officer was an officer and that his conduct was unlawful.

> [State]: Well, they're saying the force is unlawful. If the force is unlawful, **they're saying the arrest is unlawful.**

> [Defense Counsel]: No. We're saying that in the mind of Defendant, he was fleeing what he considered was use of deadly force against him by an unknown person. That's what he's saying.

> [Defense Co Counsel]: And he was factually mistaken.

> [State]: And that argument is contained in the self-defense instruction to the aggravated assault lesser included.

> [Defense Co Counsel]: No, that's different. That would mean he would be acting in self-defense. He was just fleeing, and he was mistakenly fleeing from

an officer; he didn't know he was an officer. That would be a separate—

[State]: But the mistake of fact has to negate an intent of the crime; and all you're asking them to do in there is define that **at the time he fled.**

[Defense Counsel]: It does. It would find that he did not know he was an officer.

[State]: **That's not what this mistake of fact instruction says; it doesn't say anything about whether or not he was an officer .**

[Defense Counsel]: We can amend that. I don't mind amending the language.

[State]: But it's still contrary to the law, because you've got—

[Defense Co–Counsel]: Well, that's a different argument.

[Defense Counsel]: We disagree on whether it's—

[State]: Right. There's several problems with it.

[Defense Counsel]: But I don't mind amending it **if** we can come up with a language **suitable to both sides.**

THE COURT: I'm going to deny the . . . mistake of fact charge.

■ Our emphasis in the above-quoted portion of the record illustrates that defense counsel's **spoken** request and his **written** request were perceived by all as different requests. Shortly thereafter, defense counsel read into the record the relevant portion of Defendant's Exhibit # 200. In his brief, appellant points to this requested instruction as preserving "jury charge error." The trial court overruled the requested charge of mistake of fact. The pertinent portion of trial counsel's written mistake of fact instruction, which he read to the trial court and now asserts preserved "error," appears in the record as follows:

You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense.

A reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the defendant.

So, if you find from the evidence in this case that **at the time defendant fled from the officers** he acted under a mistake of fact, that is, a reasonable belief that his actions were reasonably necessary to avoid what he believed **was unlawful force** directed at him, or if you have a reasonable doubt thereof, you will find the defendant not guilty. (emphasis added)

The mistake of fact instruction that defense counsel first stated he wanted and the instruction which was actually requested in writing differ: Traylor's attorney stated on the record that his client's position was that he did not know the police officers were police officers; but his written request asks the jury to assume **he knew he was fleeing from officers** when he believed the force was unlawful.

■ The **written** requested instruction, if it had been submitted by the court to the jury, would have provided the jury with an incorrect defensive issue on mistake of fact which could have resulted in an improper acquittal. Neither fleeing from nor assaulting officers is justified by a belief that the arrest is unlawful. *Gonzalez v. State,* 574 S.W.2d 135, 137 (Tex.Crim.App.1978). The written request for a defensive issue misstated the law, was ambiguous, and conflicted with what the defendant had previously said was his actual defense-that he did not know the police were police.

Tex.Code Crim.Proc.Ann. art. 36.14 (Vernon Supp.2001), provides in pertinent part:

Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto **in writing, distinctly specifying each ground of objection**.... The requirement that the objection to the court's charge be in writing will be complied with if the objections **are dictated** to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury .... (emphasis added).

■■■ TEX.CODE CRIM.PROC.ANN. art. 36.15 (Vernon Supp.2001), provides in pertinent part:

The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses....

A trial court should refuse an instruction which is vague and misleading and which does not properly state the law. *See Jones v.. State*, 685 S.W.2d 86, 88 (Tex.App.—Beaumont 1984, no writ); *Stewart v. State*, 438 S.W.2d 560, 561 (Tex.Crim.App.1969). A trial court does not err in refusing a requested charge that is not in accordance with the law, and is ambiguous and inconsistent. *See Mutscher v. State*, 514 S.W.2d 905, 926 (Tex.Crim.App.1974). A trial court is under no duty to *sua sponte* instruct the jury on defensive issues, such as mistake of fact. *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998); *see* Art. 36.14. In *Posey*, in considering the failure to submit a mistake of fact instruction and in interpreting Article 36.14, the Court of Criminal Appeals held that "... there generally is no 'error' in the charge unless the defendant objects in writing to claimed 'errors' of commission and omission in the charge." *Posey*, 966 S.W.2d at 61.

If we looked solely at the erroneous written request which appellant claims preserved "error," we may be reluctant, under the clear language of article 36.14, to hold that the written request "distinctly specified" the omitted instruction and properly preserved the alleged "error." However, the Court of Criminal Appeals has interpreted the statute broadly. In *Francis v. State*, 36 S.W.3d 121 (Tex.Crim.App.2000), the Court was confronted with a request for an erroneous charge; the defendant requested a modification of the trial court's proposed jury instruction. *Id.* at 122. The Court held nevertheless that defendant's objection was sufficient to preserve error. *Id.* at 123; *see also Stone v. State*, 703 S.W.2d 652, 655 (Tex.Crim.App. 1986). For this reason, we address the merits of the objection and requested instruction.

We hold that the refusal to submit the mistake of fact instruction was not error. The basic question presented here is the same as that before the Court of Criminal Appeals in *Bruno v. State*, 845 S.W.2d 910 (Tex.Crim.App.1993); that is, whether the mistake of fact instruction "need have been given in the first place." In *Bruno*, the Court held that a mistake of fact instruction was unnecessary because the jury could not have convicted the defendant if they believed his story even without the mistake of fact instruction. The Court stated:

The jury heard both stories. As they would have necessarily been required to disbelieve appellant's story before they could find sufficient evidence to convict, the instruction need not have been given in the instant case.

*Id.* at 913. Here, the jury could not have convicted defendant under the charge the

jury was given if they believed his story that he did not know the police were police. The charge instructed the jury that they had to find that Traylor knew Ward was a public servant in order to convict him of Assault on a Public Servant.

■ We hold that the trial court did not err in failing to submit the "didn't know the police were police" mistake of fact instruction because the instruction was not necessary. *See Bruno*, 845 S.W.2d at 912–913. The trial court did not err in failing to submit the written requested instruction because it was an incorrect statement of the law. Point of error one is overruled.[1]

### POINT OF ERROR TWO—JURY MISCONDUCT—

■ In his second point of error, Traylor contends that the trial court erred in not granting his motion for a new trial on the basis of jury misconduct. Traylor produced affidavits from two jurors who allege that jurors bargained for votes during the guilt/innocence deliberations, discussed parole during sentencing deliberations, and bullied dissenters during both phases.

However, TEX.R.EVID. 606(b) precludes any inquiry into the matters raised by these affidavits, as Traylor himself acknowledges. *See Hart v. State*, 15 S.W.3d 117 (Tex.App.—Texarkana 2000, pet. ref'd); *In the Matter of S.P.*, 9 S.W.3d 304 (Tex.App.—San Antonio 1999, no writ). Point of error two is overruled.

Mark Traylor's conviction and sentence are affirmed.

### AFFIRMED.

WALKER, Justice, concurring.

I cautiously, confusedly, and respectfully concur with the majority's affirmance of appellant's conviction. Truthfully, the present state of the law regarding the propriety of submitting the defensive issue of "mistake of fact" is entirely unclear to me. At first blush, my examination of *Bruno v. State*, 845 S.W.2d 910 (Tex.Crim. App.1993), a plurality opinion,[1] led me to conclude that it is reasonable to hold that when the state of the evidence would not permit a jury to convict a defendant if it believed his "mistake of fact" *and at the same time* it believed the complaining witness' testimony, the mistake of fact merely "negating" an essential element of the offense, a mistake of fact instruction is not warranted. Later, in a moment of apparent *déjà vu*, I recalled a very brief, but, nevertheless, very perplexing ruling by the Court of Criminal Appeals reversing an opinion out of this Court, authored by this writer. The opinion in question is unpublished; therefore, it may not be cited as authority. TEX.R.APP.P. 47.7. Attached to that opinion was a dissenting opinion filed by Judge Johnson, in which Judges Meyers and Price joined. I reproduce it in its entirety below as an appendix to this con-

1. The Court of Criminal Appeals has emphasized that juries should be instructed on statutory defenses whenever they are raised by the evidence, even if that evidence appears flimsy. *Granger v. State*, 3 S.W.3d 36, 38 (Tex.Crim. App.1999). A defendant's unsupported testimony is enough to raise such an issue. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex.Crim.App. 1987). The issue here, though, is not the flimsiness of defendant's evidence; the trial court here committed no error in refusing the mistake of fact instruction because it was unnecessary. *See Bruno*, 845 S.W.2d at 912–913. In order to convict defendant under the charge given the jury was required to disbelieve his story.

We recognize our holding conflicts with the decisions in *Anderson v. State*, 11 S.W.3d 369 (Tex.App.—Houston [1st Dist.] 2000, pet ref'd) and *Venegas v. State*, 660 S.W.2d 547 (Tex. App.—San Antonio 1983, no pet.); nevertheless, our holding is governed by *Bruno*.

1. A plurality opinion has no precedential value. *Hernandez v. State*, 988 S.W.2d 770, 772 (Tex.Crim.App.1999).

currence. It contains a concise, reasonable, and, as I see it, legally airtight discussion of the state of the law on mistake of fact instructions. Am I able to rely on this superb piece of legal scholarship as authority? For three reasons, the answer is "no." First, it is an unpublished opinion. Second, it is an unpublished dissenting opinion. Third, it is an unpublished dissenting opinion attached to a majority opinion which explicitly reversed this Court on the identical legal issue presented in the first point of error in the instant case. I therefore concur in the affirmance of the appellant's conviction, as appellant suffered no harm because his requested mistake of fact instruction was encompassed in the trial court's jury charge which instructed the jury to convict only if it found beyond a reasonable doubt that appellant knew the officer in question was a police officer. *See DeBolt v. State*, 604 S.W.2d 164, 168 (Tex.Crim.App.1980).

## APPENDIX

### *DISSENTING OPINION*

JOHNSON, J., filed a dissenting opinion, in which MEYERS and PRICE, JJ., join.

I respectfully dissent. Appellant was convicted of evading arrest. The Beaumont Court of Appeals found that the trial court erred in denying appellant's request for a jury instruction on the defense of mistake of fact. *Grant v. State*, No. 09–94–181CR, slip op. at 5, 1998 WL 809413(Tex.App.—Beaumont November 18, 1998) (not designated for publication), 1998 WL 809413, at *2. Finding that this error was harmful, it remanded the cause for a new trial. *Id.* at 5–6, 1998 WL 809413, at *2–*3.

Today this court reverses the Court of Appeals because the mistake of fact instruction which appellant requested "was encompassed in the trial court's jury charge which instructed the jury to convict only if it found beyond a reasonable doubt that appellant knew the officer in question was a police officer." *Ante*, at 732. As has been noted, because mistake of fact merely negates an element of the offense, the culpable mental state, there would normally need be "no instruction specifically directed to mistake of fact because the matter is adequately covered in the instruction on the elements of the offense ." 42 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 36.48 (1995). In so reasoning, the majority implicitly acknowledges that the defense of mistake of fact is not a true affirmative defense.

This, however, does not end the matter. While mistake of fact is not a true affirmative defense, our legislature has chosen to enact it as a statutory defense. TEX.PEN. CODE § 8.02(a).[1] Pursuant to this statuto-

---

1. More than half the states have similar statutes. *See* ALA .CODE § 13A–2–6(a)(1) (1999); ALASKA STAT. § 11.81.620(b)(1) (1999); ARIZ. REV.STAT. § 13–204(A)(1) (1999); CAL.PENAL CODE § 26(3) (1999); COLO.REV.STAT. § 18–1–504(1)(a) (1999); CONN.GEN.STAT. § 53a–6(a)(1) (1999); DEL.CODE tit. 11, § 441(1) (1999); HAW.REV.STAT. § 702–218(1) (1999); IDAHO CODE § 18–201(1) (1999); ILL.COMP.STAT. 5/4–8(a) (1999); IND.CODE § 35–41–3–7 (1999); IOWA CODE § 701.6 (1999); KAN.STAT. § 21–3203(1) (1999); KY.REV.STAT. § 501.070(1)(a) (1999); LA.REV .STAT. § 14:16 (1999); ME.REV.STAT. tit. 17 A, § 36(1) (1999)

MO.REV.STAT. § 562.031(1) (1999); NEV.REV. STAT. § 194.010(4) (1999); N.H.REV.STAT § 626:3(I)(a) (1999); N.J.STAT. § 2C:2–4(a)(1) (1999); N.Y. PENAL LAW § 15.20(1)(a) (1999); OKLA .STAT. tit. 21, § 152(5) (1999); PA. CONS. STAT. § 304(1) (1999); S.D.CODIFIED LAWS § 22–3–1(3) (1999); TENN CODE § 39–11–502(a) (1999); UTAH CODE § 76–2–304(1) (1999); WIS.STAT. § 939.43(1) (1999).

Several other United States jurisdictions have similar statutes. *See* 9 GUAM CODE § 7.55(a) (1999); P.R. LAWS tit. 33, § 3092 (1999); V.I.CODE tit. 14, § 14(5) (1999). The

ry mandate, we have consistently held that a defendant is entitled to an instruction on mistake of fact when it is raised by the evidence. *Willis v. State,* 790 S.W.2d 307, 314 (Tex.Crim.App.1990); *Hill v. State,* 765 S.W.2d 794, 797 (Tex.Crim.App.1989); *Woodfox v. State,* 742 S.W.2d 408, 409–10 (Tex.Crim.App.1987); *Lynch v. State,* 643 S.W.2d 737, 738 (Tex.Crim.App.1983); *Montgomery v. State,* 588 S.W.2d 950, 952–53 (Tex.Crim.App.1979); *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App. 1991) (plurality).[2] The offense with which appellant in the instant case was charged provides that "[a] person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him." TEX.PEN. CODE § 38.04. The jury charge tracked the specific language of the statute. Thus, under the logic of the majority, so long as the jury charge properly sets out the requisite culpable mental state of the offense charged, any erroneous refusal to instruct the jury on the defense of mistake of fact is, *per se,* harmless.

However, because the legislature has statutorily designated mistake of fact as a defense, it must be treated as something more than simply the negation of an element of the charged offense. To treat it as merely the negation of an element of the charged offense is to ignore its conferred legislative status and, in effect, to judicially repeal § 8.02. *See Jackson v.*

*State,* 646 S.W.2d 225, 227 (Tex.Crim.App. 1983) (to affirm conviction on basis of state's argument that charge on mistake of fact is merely denial of element of state's case would be to strike § 8.02 from the Penal Code); *see also* TEX. CONST. art. II, § 1 (division of powers).

Thus, when a trial court erroneously refuses to give such an instruction, our courts do not conduct a harm analysis on the "theoreti cal" basis asserted by the majority today; instead, we realistically consider whether there was harm "in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza v. State,* 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (op. on reh'g); *see, e.g., Hill v. State,* 765 S.W.2d 794, 797–98 (Tex.Crim.App.1989) (citing *Almanza* ); *Miller,* 815 S.W.2d at 585–86 (citing *Almanza* ); *Bang v. State,* 815 S.W.2d 838, 842 (Tex.App.—Corpus Christi 1991, no pet.) (citing *Almanza* ); *Anderson,* 11 S.W.3d 369, 373–74 (citing *Almanza* ). The majority opinion is in conflict with this approach.

Moreover, the majority opinion conflicts with two recent cases decided by this court. In *Granger v. State,* 3 S.W.3d 36, 41 (Tex.Crim.App.1999), we held that the trial court had erred in not submitting the requested instruction on mistake of fact to

Model Penal Code also has such a provision. MODEL PENAL CODE § 2.04(1)(a).

**2.** Recently, we held that a defendant is not entitled to a separate jury instruction on the defense of alibi. *Giesberg v. State,* 984 S.W.2d 245 (Tex.Crim.App.1998), *cert. denied,* 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999). We noted that an alibi defense is not a true affirmative defense, but merely negates an element of the offense. *Id.* at 250. However, our holding ultimately rested upon the

basis that an alibi defense is not recognized by the legislature as either a defense or an affirmative defense. *Id.* In the present case, although mistake of fact is not a true affirmative defense, it has been recognized by the legislature as a defense. Thus, *Giesberg* is consistent with our case law concerning a defendant's entitlement to a jury instruction on mistake of fact. *See Anderson v. State,* 11 S.W.3d 369, 373 (Tex.App.—Houston [1st Dist.]no pet. h.).

the jury, and we remanded the cause to the Court of Appeals for an *Almanza* harm analysis. Yet, the majority now refuses to apply an *Almanza* harm analysis to such error.

In the second case, *Posey v. State*, 966 S.W.2d 57, 59–61 (Tex.Crim.App.1998), we held that when a defendant has not requested a mistake of fact instruction, the trial court does not err in failing to instruct the jury, *sua sponte*, on such a defensive issue; therefore, an *Almanza* harm analysis is not appropriate. An implication of that holding is that if a defendant does request an instruction on a defensive issue such as mistake of fact and the trial court erroneously refuses to charge the jury on that issue, then an *Almanza* analysis is the appropriate manner in which to determine harm. Again, the majority opinion is in conflict with this approach.

In the instant case, the court of appeals found that the trial court erroneously refused appellant's requested instruction on mistake of fact. *Grant*, slip op. at 5, 1998 WL 809413, at \*2. Consistent with our case law, the court of appeals then conducted the appropriate harm analysis, and found that there was harm. *Id.* at 5–6, 1998 WL 809413, at \*2–\*3. I would affirm its decision. Because a majority of this court reverses that decision in a manner that conflicts with both the legislature's mandate and our own case law, I dissent.

Date Delivered: February 16, 2000

Do Not Publish