COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
| --- | --- | --- |
| ALDO IVAN BLANCO, | § | No. 08-15-00082-CR |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 243rd District Court |
|  | § |  |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 20140D04668) |
|  | § |  |

## O P I N I O N

Aldo Ivan Blanco was found guilty of burglary of a habitation on February 24, 2015. The trial court sentenced him to ten years' imprisonment in the Texas Department of Criminal Justice, but suspended execution of the sentence and placed him on community supervision for ten years. Appellant timely filed his motion for new trial and a hearing was held on April 15, 2015. At the hearing, Appellant asserted that his trial counsel, Jeff Allder, rendered ineffective assistance of counsel and as a result, he should be granted a new trial. For the reasons that follow, we affirm.

**FACTUAL BACKGROUND**

**Guilt-Innocence Phase Testimony**

On May 17, 2014, El Paso Police Department Officer James Morales and Officer Lorenzo Ontiveros responded to an assault-family violence call on Sun Fire Street in El Paso,

Texas. They spoke with the victim, Nydia Garcia, regarding the events that took place. Garcia appeared emotional, excited, and upset while talking to the officers. She related that her former boyfriend, Appellant, showed up at her apartment, forced his way in, and assaulted her. Officer Morales recorded the interview with Garcia and took pictures of a few bruises on her arms. These pictures were admitted as State's Exhibit 1.

Garcia testified that she and Appellant dated for approximately one year, but at the time of the assault, the relationship had been over for about a year. On May 17, Garcia was alone in her apartment. Thirty minutes before Appellant arrived, her ex-husband picked up their three daughters. When Garcia heard the doorbell ring, she thought it might have been one her daughters, and she opened the door without checking to see who was there. Garcia opened the door only to find Appellant, who told her that he wanted to reconcile with her. Appellant put his foot in the door and pushed his way inside without her permission. Right from the start, Appellant wanted to check Garcia's phone. He asked Garcia to unlock her phone, and when she told him she did not want to, he pushed her. Once the phone was unlocked, Appellant grabbed it and called a man by the name of Alex. Garcia testified that she and Alex were "kind of" in a relationship. Appellant told Alex to stop sending Garcia pictures and messages because he and Garcia were partners. Garcia and Appellant then began fighting over the phone and Appellant threw it at the living room floor. During their struggle over the phone, Appellant roughly grabbed Garcia by the arms, causing her arms to bruise. After the struggle was over, Garcia told Appellant she was going to the bathroom to take a shower. Appellant pushed her and grabbed her by the arms again. Garcia screamed and returned to the living room. There, the two began arguing again and Garcia repeatedly told Appellant to leave. They struggled over the door and Appellant smashed Garcia's finger. Garcia was unsure if Appellant's finger had also been

2

smashed in the door. Thereafter, Appellant left, and ten minutes later, Garcia called the police.

On cross-examination, Garcia denied seeing Appellant the day before the assault. She reiterated that she did not invite Appellant into her apartment. She also denied that she and Appellant had an agreement to trade phones for the day--that she would show him her phone and he would show her his phone. She admitted that during the struggle near the front door, she punched Appellant a few times to defend herself. Garcia made an in-court identification of Appellant as the person who entered her apartment without permission on May 17, 2014. After Garcia testified, the State rested its case.

Appellant testified on his own behalf and explained that he and Garcia had broken up approximately six months before the assault occurred. He met with Garcia at her apartment the evening before the assault. They spoke outside and Garcia knew that Appellant's birthday was the next day. According to Appellant, Garcia kissed him, and told him she missed him and "wanted [him] to make love to her." She told Appellant to come back the next day between 2:30 and 3 p.m.

Appellant returned to Garcia's apartment the next day, and waited for her to arrive. Garcia arrived around 3 p.m. and the two walked to her apartment. Initially, Garcia told Appellant not to come inside, but then she changed her mind and invited him in. Garcia immediately went to her bedroom and Appellant followed. She told Appellant that she was going to give him his birthday present. She took her clothes off and according to Appellant, they had sex. Afterwards, Garcia asked Appellant if he had any "friends with benefits," and when he said he did not, Garcia told him that she did. Garcia then asked for Appellant's phone because she wanted to see if he had any pictures on it. Appellant suggested that they switch phones, but Garcia's phone was locked. After she unlocked her phone, Appellant went through it and found

pictures of men in their underwear, and recognized a man named Alex, who goes by the nickname, "Cuban." Garcia told Appellant to go ahead and call Cuban. When the conversation between Appellant and Cuban ended, Garcia thanked Appellant sarcastically, indicating that Cuban did not previously have her phone number, and now that he did, he was going to start bothering her. Garcia became upset and started arguing with Appellant. She then got up to go take a shower and threw Appellant's phone at him. Garcia started to kick and punch Appellant so he hugged her and tried to calm her down. Garcia then asked Appellant to leave and he did.

Appellant denied entering Garcia's apartment without her permission and assaulting her. After leaving the apartment, he went to work. When he arrived home, his mother informed him that the police had come to the house looking for him. Appellant called his bail bondsman the following day, and learned there was a warrant out for his arrest. Upon learning of the warrant, Appellant turned himself in.

## The Motion for New Trial

On April 15, 2015, the trial court held a hearing on Appellant's motion for new trial. Appellant testified about five text messages he sent to Garcia before the incident on May 17, 2005. He claimed his trial counsel did not inform him of the State's offer of deferred adjudication despite his not having any issues with Allder negotiating a plea agreement on his behalf. Appellant next requested that the trial court take judicial notice of an affidavit submitted by Allder in which he admitted he rendered ineffective assistance of counsel. Appellant submitted this affidavit because he did not intend to call Allder to testify. The trial court indicated that it was not comfortable ruling on the motion without Allder's in-court testimony. The trial court gave Appellant an opportunity to subpoena Allder and on April 29, 2015, the hearing resumed. Allder testified that everything in the affidavit was true and correct and agreed

4

that Appellant should have a new trial. Specifically, Allder enumerated that he rendered ineffective assistance by failing to: (1) file a motion to have the 911 call translated from Spanish to English; (2) file a motion to request the appointment of an investigator; (3) file a motion to obtain Garcia's telephone and text numbers; (4) file a motion to view the crime scene; (5) subpoena Garcia's phone-service carriers; (6) file a motion in limine to preclude the State from presenting Appellant's criminal history; and (7) properly prepare Appellant to testify at trial.

On cross-examination, Allder admitted that he did not know what effect, if any, his omissions might have had on the outcome of Appellant's case. The trial court informed the parties it needed time to consider the evidence before making a decision. The record does not contain a ruling on the motion such that it was overruled by operation of law.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant raises eleven sub-issues on appeal to support the proposition that he received ineffective assistance of counsel. He complains that Allder failed to: (1) request a mistake-of-fact instruction; (2) file a discovery request under Article 39.14 of the Texas Code of Criminal Procedure; (3) file a motion to translate the 911 call; (4) file a motion to appoint an investigator; (5) file a motion to obtain Garcia's telephone and text numbers and issue subpoenas to phone-service carriers; (6) file a motion to visit the crime scene; (7) file a motion in limine regarding Appellant's criminal history; (8) admit Garcia's video-recorded statement; (9) properly prepare Appellant to testify; and (10) admonish Appellant in writing of the consequences of testifying at trial. He finally contends that all of these alleged failings constitute cumulative error. We will address Appellant's First, Second, and Eleventh Issues. The State argues that Appellant failed to preserve Issues Three through Ten for review. We agree.

We follow the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), to determine whether a defendant received ineffective

5

assistance of counsel. To prevail on an ineffective assistance of counsel claim, Appellant must show that: (1) his attorney's performance was deficient; and (2) that his attorney's deficient performance prejudiced his defense. *Vasquez v. State*, 830 S.W.2d 948, 949 (Tex.Crim.App. 1992). Appellant must satisfy both *Strickland* components, and the failure to show either deficient performance or prejudice will defeat an ineffectiveness claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

Under the first prong, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. *Perez*, 310 S.W.3d at 893; *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).

We presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813. In most cases, this task is very difficult because the record on direct appeal is undeveloped and cannot reflect trial counsel's failings. *Id.* at 813-14. Where the record is silent and fails to provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation in order to find ineffective assistance when the record is silent as to an

6

attorney's trial strategy. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex.Crim.App. 2000). When the record lacks evidence of the reasoning behind trial counsel's actions, his performance cannot be found to be deficient. *Rylander*, 101 S.W.3d at 110-11; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994).

## Failure to Request a Mistake-of-Fact Instruction

Section 8.02(a) of the Penal Code provides that it is a defense to prosecution if the actor, through a mistake, formed a reasonable belief about a matter of fact that negates the kind of culpability required for commission of the offense. *See* TEX.PEN.CODE ANN. § 8.02(a)(West 2011). Specifically, Appellant contends that he was entitled to an instruction regarding his mistaken belief that Garcia invited him over to her apartment.

The jury was instructed that, to find Appellant guilty of burglary of habitation, it must find that he did then and there enter the habitation of Garcia without her effective consent, and when he entered, he either had the intent to commit an assault, or, if after entering, committed an assault. The charge defined what is required to show that a defendant acted "with intent" or "intentionally." Appellant argues that due to Allder's failure to request a mistake of fact instruction, the jury was left with no basis to negate the culpable mental state required for the offense. However, the charge instructed the jury to find Appellant guilty only if it found beyond a reasonable doubt that Appellant entered Garcia's apartment without her effective consent and either had the intent to commit an assault or after entering, committed an assault. *See* TEX.PEN.CODE ANN. § 30.02(c)(2)(West 2011). Given the charge, the jury necessarily had to determine whether it believed Appellant's testimony about his mistaken belief. When it found him guilty of burglary of a habitation, the jury chose not to believe Appellant's assertion that Garcia invited him into her apartment and implicitly rejected his claim that he was invited under

7

the circumstances he described at trial. The jury had to consider his mistake of fact defense before finding him guilty of the offense of burglary of habitation. Had it believed Appellant's testimony that Garcia invited him into her apartment, the jury could not have found--as it necessarily did--that Appellant entered the habitation of Garcia without her effective consent. The jury could not have believed Appellant's testimony and also have found him guilty under the charge as given. There is not a reasonable probability that including a mistake of fact instruction in the charge would have changed the outcome in this case. *See Bruno v. State*, 845 S.W.2d 910, 913 (Tex.Crim.App. 1993)(stating that jury would have been required to disbelieve appellant's story before it could find sufficient evidence to convict, thus the instruction need not have been given); *Sands v. State*, 64 S.W.3d 488, 496 (Tex.App.--Texarkana 2001, no pet.)(holding that, although mistake of fact instruction should have been given, failure to submit requested instruction was not harmful because jury was "squarely" presented with defense of mistake); *Traylor v. State*, 43 S.W.3d 725, 730-31 (Tex.App.--Beaumont 2001, no pet.)(concluding that mistake of fact instruction was not required because, had the jury believed defendant's story, it could not have convicted him under charge given); *see also Hopson v. State*, No. 14-08-00735-CR, 2009 WL 1124389, at *3-5 (Tex.App.--Houston [14th Dist.] Apr. 28, 2009, no pet.)(mem. op., not designated for publication)(holding mistake of fact instruction not necessary in burglary case because "to convict [appellant] of that offense, the State was already required to prove beyond a reasonable doubt that appellant entered the house, without the effective consent of the owners, with the intent to commit theft"); *Turner v. State*, No. 04-03-00436-CR, 2004 WL 1881748, at *7 (Tex.App.--San Antonio Aug. 25, 2004, no pet.)(mem. op., not designated for publication)(rejecting claim that counsel was ineffective because he failed to request mistake of fact instruction because "the jury had to consider her defense of consent before finding her

8

guilty, and there is no indication that including a mistake of fact instruction would have changed the outcome;" thus, appellant did not show prejudice component of *Strickland*).

We thus conclude that Appellant has failed to show that there is a reasonable probability that, but for Allder's alleged deficient performance, the outcome of the proceeding would have been different. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex.Crim.App. 2005). The failure to make a showing under either of the required prongs of *Strickland* defeats a claim for ineffective assistance of counsel. *Williams v. State*, 301 S.W.3d 675, 687 (Tex.Crim.App. 2009). Issue One is overruled.

## Failure to File a Discovery Request

Appellant next suggests that Allder rendered ineffective assistance when he failed to file a discovery request under Article 39.14 of the Texas Code of Criminal Procedure, thereby relieving the State of its obligation to produce any and all evidence it has against him. Appellant's argument is misplaced. First, a discovery request from a defendant only implicates the State's disclosure obligations under Article 39.14(a) and (b). TEX.CODE CRIM.PROC.ANN. art. 39.14(a), (b)(West Supp. 2016). The State correctly points out that its disclosure obligations under Article 39.14(h) are independent from a defense request under Article 39.14(a) and (b), and exist "[n]otwithstanding any other provision of [the] article." TEX.CODE CRIM.PROC.ANN. art. 39.14(h).

Appellant also appears to argue that Allder's failure affected the State's obligation to disclose the names of three individuals who were identified in the State's case file but who were not listed in the State's witness list filed with the trial court. There is no general constitutional right to discovery in a criminal case. *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). "Although the Due Process Clause confers upon defendants a right

9

to be informed about the existence of exculpatory evidence, it does not require the prosecution to 'reveal before trial the names of all witnesses who will testify unfavorably.'" *Ex parte Pruett*, 207 S.W.3d 767, 767 (Tex.Crim.App. 2005), *quoting Weatherford*, 429 U.S. at 559, 97 S.Ct. at 845. Although Article 39.14 affords a defendant the right to discovery of certain items, it does not mandate disclosure of witnesses generally but only of expert witnesses and then only when ordered by the trial court. TEX.CODE CRIM.PROC.ANN. art. 39.14; *Woods v. State*, No. 07-02-0192-CR, 2003 WL 1738399, at *1 (Tex.App.--Amarillo Apr. 2, 2003, no pet.)(not designated for publication)(in the absence of a discovery order by the trial court or agreement by the parties, the State has no duty to provide a list of witnesses it intends to call at trial); *Thornton v. State*, 37 S.W.3d 490, 492 (Tex.App.--Texarkana 2000, pet. ref'd)(Article 39.14(a) does not specifically provide that a trial court can order the State to disclose its witnesses).

The record does not reflect that the State was ordered to disclose its witnesses. Even if Allder had submitted a discovery request, nothing required the State to disclose the names of the individuals it ultimately did not call as witnesses. We overrule Issue Two.

## Waiver of Issues Three Through Ten

The State contends that Issues Three through Ten issues have been inadequately briefed. We agree. The argument section of an appellate brief must contain a clear and concise argument for the contentions made with appropriate citations to authorities and to the record. TEX.R.APP.P. 38.1(i). When a party's argument consists only of conclusory statements without proper citation to appropriate authorities or lacks substantive analysis, the party has inadequately briefed the case and presents nothing for our review. *Russeau v. State*, 171 S.W.3d 871, 882 (Tex.Crim.App. 2005)(overruling appellant's issue where he provided no argument or legal authority to support his claim); *Medellin v. State*, No. 13-13-00190-CR, 2015 WL 1544720, at *8

10

(Tex.App.--Corpus Christi Apr. 2, 2015, pet. ref'd)(not designated for publication)(appellant's argument was inadequately briefed and not preserved for review where he failed to provide any argument or applicable authority); *Montoya v. State*, No. 08-12-00305-CR, 2014 WL 1396707, at *1 (Tex.App.--El Paso Apr. 9, 2014, no pet.)(not designated for publication)(concluding that appellant failed to preserve issue for review due to inadequate briefing where he provided only conclusory statements with no substantial analysis); *Esparza v. State*, No. 08-12-00007-CR, 2014 WL 97301, at *6 (Tex.App.--El Paso Jan. 10, 2014, no pet.)(not designated for publication)(appellant's issue was inadequately briefed where he failed to cite any legal authority in support of his argument); *Campbell v. State*, No. 08-10-00298-CR, 2011 WL 3198873, at *1 (Tex.App.--El Paso Jul. 27, 2011, no pet.)(not designated for publication)(appellant failed to provide any argument or legal authority in support of his issue, and thus, it was inadequately briefed).

With regard to Issue Three, Appellant's entire argument consists of the following four sentences:

> Counsel for Appellant does not speak, write or understand Spanish language and a piece of very important evidence needed to be translated. Appellant had stated to his counsel that the 911 tape might possibly have some very vital information to this case, but even to this day counsel is unaware as to the context of that call. The 911 tape, as well as most all 911 tape, usually goes straight to the issue as to what occurred and what state of mind the caller is in, when making the call. Counsel admitted that his failure to translate the 911 call constitutes ineffective assistance of counsel.

The argument section for Issue Four consists of the following:

> In filing a motion for an investigator, that investigator would have been able to assist in the defense of Appellant by following up leads as to phone calls, interview witnesses, gather additional witnesses not listed in the state's witness list. Counsel admitted that his failure to request and investigator constitutes ineffective assistance of counsel.

In his Fifth Issue, Appellant asserts:

11

In filing and requesting the telephone and text numbers of the complaining witness, counsel would have been able to show a time line and substantiate Appellant's argument and defense that he was invited to enter the complaining witness's apartment and negate the charge of burglary against him. Counsel admitted that his failure to request and obtain the telephone and text numbers constitutes ineffective assistance of counsel.

Relatedly, in Issue Six, he contends that Allder rendered ineffective assistance because he failed

to file subpoenas to the phone service carriers:

In filing and requesting subpoenas to the phone service carriers, counsel would have been able to show a time line and substantiate Appellant's argument and defense that he was invited to enter the complaining witness's apartment and negate the charge of burglary against him. Counsel admitted that his failure to request subpoenas to the phone service carriers [to] obtain the telephone and text numbers constitutes ineffective assistance of counsel.

Concerning his Seventh Issue, Appellant offers one sentence:

In being able to view the scene with Appellant, counsel would have had a better understanding as the [sic] what happened that day and thereby be able to effectively cross-examine in more detail, in a frame by frame, explanation and possibly admission that the complaining witness gave consent.

Issue Eight argues that Appellant received ineffective assistance because Allder failed to file a

motion in limine:

[T]he motion would have prevented the state from bringing out the Appellant criminal history to the jury, during his guilt and punishment stage of the trial. Knowing that Appellant has a criminal record, would have not been wise to have him testify in trial.

Issue Nine contains two sentences:

Counsel for Appellant, during his cross-examination of Ms. Garcia, would have been able to show all the inconsistencies in her testimony, to the jury. Her statements, in the video, when properly admitted in trial would have shown that where she directing the officers as to how this incident took place.

Issue Ten alleges:

There is no possible "trial strategy" that could explain why counsel for Appellant would want his extraneous offenses placed before the jury, by putting Appellant

12

on the stand without first inquiry to his criminal convictions, especially when there are other defense that will go to the issue of consent. The law goes to great lengths to insulate a defendant's extraneous behavior from the case being tried at the guilt of innocence stage. For counsel to throw away these protections without consideration of the consequences does not meet reasonable standards of attorney behavior.

Appellant's arguments are without support of any citations to the record or legal analysis. Although he cites to case law initially addressing the *Strickland* standard for ineffective assistance of counsel, he fails to provide any legal arguments based on that authority and does not apply the law to the facts in his case. He does not address how Allder's performance or lack thereof prejudiced his defense. It is Appellant's burden to provide supporting argument, analyzing the case law cited and applying that law to the facts in his case. TEX.R.APP.P. 38.1(i); *Rocha v. State*, 16 S.W.3d 1, 20 (Tex.Crim.App. 2000). We will not make Appellant's arguments for him. *Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex.Crim.App. 2000).

Because Issues Three through Ten merely utter brief conclusory statements and fail to provide any substantive analysis or legal argument as required by the rules of appellate procedure, we conclude they have been inadequately briefed and are waived. TEX.R.APP.P. 38.1(i); *Swearingen v. State*, 101 S.W.3d 89, 100 (Tex.Crim.App. 2003)(concluding issue was inadequately briefed because appellant did not apply law to facts); *Wood v. State*, 18 S.W.3d 642, 650-51 (Tex.Crim.App. 2000)(concluding appellant waived issue by failing to adequately develop argument); *Narvaiz v. State*, 840 S.W.2d 415, 432 (Tex.Crim.App. 1992)(concluding issue inadequately briefed when appellant offered no argument for issue raised). Issues Three, Four, Five, Six, Seven, Eight, Nine, and Ten are overruled.

## Cumulative Error

Finally, Appellant complains of the cumulative effect of his counsel's deficiencies. We find his complaint lacks merit. When an appellant raises an issue of cumulative error, we must

13

conduct a harm analysis. *Etienne v. State*, No. 08-12-00266-CR, 2014 WL 4450096, at *6 (Tex.App.--El Paso Sept. 10, 2014, no pet.)(not designated for publication). However, before conducting a harm analysis, we must find multiple errors have occurred. *See Chamberlain v. State*, 998 S.W.2d 230, 238 (Tex.Crim.App. 1999), *cert. denied*, 528 U.S. 1082, 120 S.Ct. 805, 145 L.Ed.2d 678 (2000)(explaining that unless and until multiple errors are found to have been committed, there can be no cumulative error effect because non-errors cannot in their cumulative effect create harmful error).

Because we have found no error, it follows that there can be no cumulative error. *Chamberlain*, 998 S.W.2d at 238. We overrule Issue Eleven and affirm the judgment of the trial court.


February 15, 2017
                                   ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating

(Do Not Publish)