**Sue O. MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–87–00441–CR.**

Court of Appeals of Texas, Dallas.

July 21, 1988.

Rehearing Denied Aug. 26, 1988.

Henry L. Burkholder, III, Houston, for appellant.

Pamela Sullivan Berdanier, Dallas, for appellee.

Before WHITHAM, STEWART and LAGARDE, JJ.

WHITHAM, Justice.

Sue O. Miller appeals a conviction of kidnapping. We find no merit in appellant's first two points of error, and we overrule them accordingly. We do, however, find merit in appellant's third point of error, and we reform the trial court's judgment. Accordingly, we affirm the trial court's judgment as reformed.

The jury found appellant guilty of kidnapping Mallory Elizabeth Sutton, an infant, on or about November 13, 1985. Mallory's mother, Jennifer Lynn Sutton, testified that she hired appellant to babysit Mallory on weekdays in the Sutton home and that she knew appellant as "Bernice Kelly." Sutton testified that she interviewed appellant on November 8 in her well-lighted house for one and a half hours, which gave Sutton the opportunity to "get a good look at her face." Sutton further testified that appellant arrived at the Sutton home for her first day of work on November 13 and that she spent 45 minutes talking with appellant and familiarizing appellant with the house before leaving for work. On that same day, Sutton returned home to find appellant and Mallory missing from the house. The following items were also missing: 12 baby bottles, baby formula, baby clothes, one baby picture and frame, a baby carrier, a baby bag, and a baby blanket. Sutton testified that she never gave appellant permission to take Mallory from the home. Sutton next saw her daughter on December 13, 1985, in Tampa, Florida, when Sutton flew to Tampa to recover the baby. On December 16, 1985, Sutton selected appellant's photo from a six-picture photographic lineup. During a separate lineup, Sutton's mother, Glenda Sutton, also identified appellant's photo as the babysitter Sutton had hired.

Appellant admitted possessing the infant. However, she denied knowing the infant was Mallory Sutton. Appellant told the jury that she was surprised when she first learned that the child that had been in her custody was kidnapped; she stated that she never had any suspicion that the child had been kidnapped. She denied ever taking the child from Sutton or ever being in the Sutton home. Instead, appellant testified that the baby was given to her for adoption. Appellant testified that she had become interested in raising a child after learning that her third husband, Greg Miller, could not father children. She eventually adopted a young boy named Chad. Appellant stated that she and Miller did not go through normal channels to adopt their son Chad, although she and her husband did legally adopt Chad. Appellant adopted Chad through her friend Abigail Caroline Wilson. Appellant later lost custody of Chad to Miller as a result of divorce and custody litigation.

In early 1985, Wilson informed appellant that she knew of an unwed mother who wanted to give her child up for adoption after birth. Appellant told the jury that she did not know who the mother was, nor did she ever want to. Appellant thought that it was "better not to know too much about the parents." Appellant believed, however, that the child belonged to Wilson's youngest daughter. Although appellant and Wilson both lived in Houston at the time, appellant arranged to meet with Wilson in Dallas to take custody of the child. Appellant testified that she met with Wilson at a hotel on November 13, 1985, and that she took custody of the child. Appellant did not think this method of adoption was unusual. Appellant testified that she had tried normal adoption

agencies, but that she had been turned down.

In appellant's first point of error, appellant asserts that the trial court committed reversible error in failing to instruct the jury on the law of mistake of fact. Appellant requested the following instruction, which was denied by the trial court:

A: You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense.

B: Reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the Defendant.

C: Therefore, if you find from the evidence or have a reasonable doubt thereof that at the time Sue O. Miller was in possession of Mallory Sutton that Sue O. Miller acted under the belief that she had been given Mallory Sutton to be adopted, then you will find the Defendant Sue O. Miller not guilty of the offense alleged in the indictment.

Appellant argues that her mistaken belief that she had been given Mallory to be adopted negated the culpability required for the offense of kidnapping. *See* TEX. PENAL CODE ANN. § 8.02(a) (Vernon 1974). Section 8.02(a) of the Penal Code provides that "[i]t is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense." An accused is entitled to an affirmative instruction on the law as to every defensive issue raised by the evidence, including those raised by his testimony alone. *Knowles v. State*, 672 S.W.2d 478, 480 (Tex.Crim.App.1984). Therefore, a trial court's refusal to give a charge that applies the law of mistake of fact to the very facts of the case, over the appellant's objection and in the face of a properly requested charge, is reversible error. *Beggs v. State*, 597 S.W.2d 375, 380 (Tex.Crim.App.1980). Since appellant made a proper request, we determine whether appellant's defensive

theory constitutes a mistaken belief which negates the kind of culpability required for commission of the offense.

We begin this determination by looking at the court's charge, as follows:

Now, if you find and believe from the evidence beyond a reasonable doubt that the defendant, Sue O. Miller, on or about the 13th day of November, 1985, in the County of Dallas and State of Texas did then and there knowingly or intentionally abduct another person, namely: Mallory Elizabeth Sutton, by restraining the said Mallory Elizabeth Sutton, to-wit: by moving her from one place to another or by confining her with the intent to prevent the liberation of the said Mallory Elizabeth Sutton by secreting or holding her in a place where she was not likely to be found, and that the said Mallory Elizabeth Sutton was a child less than 14 years or [sic] age whose mother, Jennifer Sutton, had not acquiesced in the restraint of the said Mallory Elizabeth Sutton, then you will find the defendant guilty of kidnapping, as alleged in the indictment.

Unless you so find and believe from the evidence beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict "not guilty".

The court's charge closely tracked the pertinent language of sections 20.01 and 20.03 of the Penal Code as it applied to the facts of this case. TEX.PENAL CODE ANN. §§ 20.01(2), 20.03 (Vernon 1974). Under section 20.03, "[a] person commits an offense [of kidnapping] if he intentionally or knowingly abducts another person." Under section 20.01(2), " '[a]bduct' means to restrain a person with intent to prevent his liberation by: (A) secreting or holding him in a place where he is not likely to be found...." " 'Restrain' means to restrict a person's movements without consent, so as to interfere substantially with his liberty, by moving him from one place to another or by confining him." Restraint is "without consent" if the child is younger than fourteen years of age, and the parent has not acquiesced in the movement or

confinement. *See* TEX.PENAL CODE ANN. § 20.01(1).

Thus, the elements the State was required to prove in order to establish that appellant committed the offense of kidnapping were:

(1) a person

(2) intentionally or knowingly

(3) abducts

(4) another person.

*Cf. Bowers v. State*, 570 S.W.2d 929, 932 (Tex.Crim.App.1978). With these elements in mind, along with the definitions of "abduct" and "restrain," we determine whether appellant's mistaken belief that she had been given Mallory to be adopted negated the culpability required for the commission of the offense of kidnapping. The issue is whether appellant's version of the events, if true, would entitle her to an acquittal. If so, she was entitled to an affirmative submission of a defensive charge on the subject, because the truth or falsity of her testimony is for the jury to decide. *Jackson v. State*, 646 S.W.2d 225, 226 (Tex. Crim.App.1983). All statutory affirmative defenses generally apply to justify the defendant's admitted participation in the act itself. *Sanders v. State*, 707 S.W.2d 78, 81 (Tex.Crim.App.1986). Thus, evidence which constitutes a defense requires the accused to admit the commission of the offense, but to justify or excuse her actions so as to absolve her of criminal responsibility for engaging in conduct which otherwise constitutes a crime. *Sanders*, 707 S.W.2d at 81. That is why a defendant is entitled to a jury charge on such an issue, so that the jury can find that the State has proven every element of the offense and yet find the defendant not guilty. *Barnette v. State*, 709 S.W.2d 650, 652 (Tex.Crim.App. 1986). If the alleged defensive theory merely negates an element of the offense, then no affirmative charge must be given. *Sanders*, 707 S.W.2d at 81. We conclude that appellant's testimony presenting a defense of possession of the child for adoption negated the element of abduct, i.e. restraining the child with the intent to prevent her liberation by secreting or holding the child in a place where she was not

likely to be found. Appellant testified that Scott Oakes, appellant's husband, took the child to Tampa, Florida, to show the child to Oakes' mother, not to hide her. In her brief, appellant tells us that the Federal Bureau of Investigation agent who questioned appellant concluded from his discussions with her that appellant "never had the intent to secret or hold the child in a place where the child's mother would not likely find her." Consequently, if the jury were to believe appellant's version of the facts, we would find the element of abduction missing because appellant did not intend to prevent the child's liberation by secreting or holding the child in a place where she was not likely to be found. In the circumstances of this case, therefore, appellant's testimony did not justify participation in the offense; rather, it implicitly denied an element of the offense. *See Sanders*, 707 S.W.2d at 81. Had the jury believed appellant's story, they would have necessarily believed that she did not "abduct" the child. Because the defensive theory merely negated an element of the offense, no instruction was needed. Consequently, we conclude that the trial court did not commit error in failing to instruct the jury on the law of mistake of fact. Accordingly, we overrule appellant's first point of error.

■ In her second point of error, appellant asserts that the trial court erred in permitting the State to elicit testimony constituting hearsay. At trial, Sutton and Sutton's mother identified appellant as the person they hired to babysit. On direct examination of Officer Frysinger, an investigating officer, the State asked for the description of the suspect that Officer Frysinger disseminated to others. The trial court overruled appellant's second objection to this question. The complained of testimony is as follows:

[PROSECUTING ATTORNEY]: At the time that you took the report did you also take a physical description from both of the subjects, Glenda Sutton and Jennifer Sutton?

[OFFICER FRYSINGER]: Yes, sir, I did.

[PROSECUTING ATTORNEY]: Did you combine that into one description on your report?

[OFFICER FRYSINGER]: Yes, sir, I did.

[PROSECUTING ATTORNEY]: What was the description that you disseminated to the other officers?

[DEFENSE COUNSEL]: Excuse me. I object to any hearsay matters. I would like to be able to have an opportunity to look at any reports, take the witness on voir dire. I will object to hearsay at this time.

THE COURT: I will sustain as to hearsay. Could you restate your question?

[PROSECUTING ATTORNEY]: I'm not asking what she told you. What information did you disseminate to other agencies at that time as far as a description of the individual involved?

[DEFENSE COUNSEL]: The basis of that would be hearsay, Judge.

THE COURT: I will overrule that objection.

[OFFICER FRYSINGER]: A white female, five foot five, 130 to 150 pounds, large build, long sleeved, long tailed shirt, blue in color; blue jeans and white sandals, I believe it was.

Generally, hearsay is evidence of a statement made out of court which is offered for the purpose of proving the truth of the statement. *See Girard v. State*, 631 S.W.2d 162, 164 (Tex.Crim.App.1982); TEX.R. CRIM.EVID. 801(d). Here, the complained of testimony is not hearsay. Officer Frysinger merely testified as to what description he disseminated to other law enforcement agencies, not to what the Suttons told him. This description was based on Officer Frysinger's combination of the descriptions which the Suttons gave him. The State argues that Officer Frysinger's testimony was offered not to prove the truth of the matter asserted, i.e. that the description of the suspect provided by the Suttons was accurate, but for the purpose of showing what information was disseminated by Officer Frysinger.

■ As appellant points out, her identification as the babysitter was a contested issue. Defense counsel extensively cross-examined Sutton as to the accuracy of the description she gave to the police and as to conflicting descriptions which she gave to the press. Defense counsel also cross-examined Federal Bureau of Investigation agent Rivett about the description of Bernice Kelly he had received from the Coppell Police Department and whether there were two conflicting descriptions and possibly two suspects involved. Thus, appellant questioned the accuracy of the suspect's description provided to the Coppell Police Department. Consequently, we conclude that Officer Frysinger's testimony was admitted for the purpose of showing what description was disseminated. Statements offered for the purpose of showing what was said, and not for the truth of the matter stated, do not constitute hearsay. *Nixon v. State*, 587 S.W.2d 709, 711 (Tex. Crim.App.1979). Therefore, we conclude that the trial court did not err in allowing the State to elicit this complained of testimony.

We note that appellant, in her brief, also asserts that Officer Frysinger's testimony bolstered the identification of appellant by the Suttons. However, the issue of bolstering is not before this Court because appellant never objected at trial to Officer Frysinger's testimony as bolstering. Where an appellant's point of error on appeal does not comport with her trial objection, nothing is presented for appellate review. *See Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Crim.App.1983). Thus, appellant waived the right to complain of any alleged bolstering with regard to this testimony. Consequently, we overrule appellant's second point of error.

■ In her third point of error, appellant asserts that the trial court erred in assessing $2,500.00 in attorney's fees as court costs when there was no evidence to sustain a finding of this or any amount. We agree. The judgment entered in appellant's cause states that appellant is required to pay "additional court costs in the amount of $2,500.00 [to] be taxed against [appellant] for compensation paid to the court appointed counsel for [appellant], as

provided by art. 26.05, Sec. 3, C.C.P." At the time of trial, article 26.05 provided as follows:

Section 1. A counsel appointed to defend a person accused of a felony or a misdemeanor punishable by imprisonment, or to represent an indigent in a habeas corpus hearing, shall be paid from the general fund of the county in which the prosecution was instituted or habeas corpus hearing held, according to the following schedule:

(a) For each day or a fractional part thereof in court representing the accused, a reasonable fee to be set by the court but in no event to be less than $50;

(b) For each day in court representing the accused in a capital case, a reasonable fee to be set by the court but in no event to be less than $250;

(c) For each day or a fractional part thereof in court representing the indigent in a habeas corpus hearing, a reasonable fee to be set by the court but in no event to be less than $50;

(d) For expenses incurred for purposes of investigation and expert testimony, a reasonable fee to be set by the court but in no event to exceed $500;

(e) For the prosecution to a final conclusion of a bona fide appeal to a court of appeals or the Court of Criminal Appeals, a reasonable fee to be set by the court but in no event to be less than $350;

(f) For the prosecution to a final conclusion of a bona fide appeal to the Court of Criminal Appeals in a case where the death penalty has been assessed, a reasonable fee to be set by the court but in no event to be less than $500.

Sec. 2. The minimum fee will be automatically allowed unless the trial judge orders more within five days of the judgment.

Sec. 3. All payments made under the provisions of this Article may be included as costs of court.

Sec. 4. An attorney may not receive more than one fee for each day in court regardless of the number of cases in which he appears as appointed counsel on the same day.

TEX.CRIM.PROC.CODE ANN. art. 26.05 (Vernon Supp.1987) (now amended at TEX. CRIM.PROC.CODE ANN. art. 26.05 (Vernon Supp.1988)).

At the time of trial, article 26.05 gave no express authority to the trial court to order the defendant to pay the costs of any legal services provided to her upon the trial court's determination that a defendant was able to pay. Rather, section 1 provided that an attorney "shall be paid from the general fund of the county in which the prosecution was instituted." However, appellant does not complain of trial court error in assessing the cost of attorney's fees against her in accordance with section 3 of article 26.05. Hence, for the purposes of this opinion, we assume, but do not decide, that section 3 of article 26.05 permits assessing attorney's fees as costs.

■ Nevertheless, we find no support in the record for the $2,500.00 in attorney's fees. The State tells us in its brief that there is ample evidence in the record to support the fee awarded. Appellant testified that she and her attorney had gone over the case for a few months, had discussed the case extensively, and had discussed the witnesses that she wanted subpoenaed. Appellant testified that she was satisfied with defense counsel's representation of her. The jury trial lasted for eight days. Defense counsel also filed a motion for new trial. This is the sum total of the evidence that the State points to as establishing the $2,500.00 award. We conclude, however, that this evidence alone amounts to no evidence supporting the $2,500.00 award of attorney's fees. Due process requires sufficient evidence in the record to show the *amount* ordered by the trial court has a factual basis. *Barker v. State,* 662 S.W.2d 640, 642 (Tex.App.—Houston [14th Dist.] 1983, no pet.) (emphasis added). Such evidence is not present in this record.

■ The Legislature has granted the trial court sole authority to set a "reasonable fee." *Smith v. Flack,* 728 S.W.2d 784, 789 (Tex.Crim.App.1987). In fact, an order entered by the court under the authority of

article 26.05 is presumed to be reasonable and must be allowed unless it can be shown that the order is so unreasonable, arbitrary, or capricious as to amount to an abuse of discretion. *See Gray County v. Warner & Finney,* 727 S.W.2d 633, 636 (Tex.App.—Amarillo 1987, no writ). Nevertheless, there must be evidence of the reasonableness of fees to support the award of attorney's fees. *See Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ). Thus, we conclude that there must be at least some evidence in the record showing how the "reasonable fee" was determined. Having concluded that the record contains no evidence supporting the $2,500.00 award of attorney's fees, we sustain appellant's third point of error. Consequently, we reform the trial court's judgment by deleting the order in the judgment assessing additional court costs, reading "that additional court costs in the amount of *$2,500.00* be taxed against the Defendant for compensation paid to the court appointed counsel for the Defendant, as provided by Art. 26.05, Sec. 3, C.C.P." *See* TEX.R.APP.P. 80(b)(2); *cf. Barker,* 662 S.W.2d at 642; *Vanderburg v. State,* 681 S.W.2d 713, 720 (Tex. App.—Houston [14th Dist.] 1984, pet. ref'd). As reformed, we affirm the trial court's judgment.

Reformed and affirmed.