**Sue O. MILLER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 1027–88.**

Court of Criminal Appeals of Texas,
En Banc.

June 5, 1991.

Rehearing Denied Sept. 18, 1991.

Randy Schaffer, Houston, for appellant.

John Vance, Dist. Atty. and Pamela Sullivan Berdanier, Asst. Dist. Atty., Dallas, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON APPELLANT'S MOTION
FOR REHEARING

OVERSTREET, Judge.

Appellant was convicted of the offense of kidnapping and on April 6, 1987 was sentenced by a jury to a term of ten years confinement in the Texas Department of Corrections and payment of a $5,000 fine.[1] See V.T.C.A. Penal Code, § 20.03. On direct appeal, the conviction was affirmed. Miller v. State, 755 S.W.2d 211 (Tex.App.— Dallas 1988). Appellant's petition for discretionary review was granted to determine whether the court of appeals had erred in holding that there was no error in the trial court's refusal of appellant's requested jury charge instruction regarding mistake of fact. In an opinion decided November 21, 1990, we concluded that such denial was error, but held that such error was harmless. On January 30, 1991, we granted appellant's motion for rehearing in order to reconsider our earlier decision. After further consideration we withdraw our previous opinion.

For purposes of this opinion, we will adopt the court of appeals' rendition of the circumstances surrounding the alleged offense:

The jury found appellant guilty of kidnapping Mallory Elizabeth Sutton, an infant, on or about November 13, 1985. Mallory's mother, Jennifer Lynn Sutton, testified that she hired appellant to baby-sit Mallory on weekdays in the Sutton home and that she knew appellant as 'Bernice Kelly.' Sutton testified that she interviewed appellant on November 8 in her well-lighted house for one and a half hours, which gave Sutton the opportunity to 'get a good look at her face.' Sutton further testified that appellant arrived at the Sutton home for her first day of work on November 13 and that she spent 45 minutes talking with appellant and familiarizing appellant with the house before leaving for work. On that same day, Sutton returned home to find appellant and Mallory missing from the house. The following items were also missing: 12 baby bottles, baby formula,

1. Now known as the Texas Department of Criminal Justice—Institutional Division.

baby clothes, one baby picture and frame, a baby carrier, a baby bag, and a baby blanket. Sutton testified that she never gave appellant permission to take Mallory from the home. Sutton next saw her daughter on December 13, 1985, in Tampa, Florida, when Sutton flew to Tampa to recover the baby. On December 16, 1985, Sutton selected appellant's photo from a six-picture photographic lineup. During a separate lineup, Sutton's mother, Glenda Sutton, also identified appellant's photo as the babysitter Sutton had hired.

Appellant admitted possessing the infant. However, she denied knowing the infant was Mallory Sutton. Appellant told the jury that she was surprised when she first learned that the child that had been in her custody was kidnapped; she stated that she never had any suspicion that the child had been kidnapped. She denied ever taking the child from Sutton or ever being in the Sutton home. Instead, appellant testified that the baby was given to her for adoption. Appellant testified that she had become interested in raising a child after learning that her third husband, Greg Miller, could not father children. She eventually adopted a young boy named Chad. Appellant stated that she and Miller did not go through normal channels to adopt their son Chad, although she and her husband did legally adopt Chad. Appellant adopted Chad through her friend Abigail Caroline Wilson. Appellant later lost custody of Chad to Miller as a result of divorce and custody litigation.

In early 1985, Wilson informed appellant that she knew of an unwed mother who wanted to give her child up for adoption after birth. Appellant told the jury that she did not know who the mother was, nor did she ever want to. Appellant thought that it was 'better not to know too much about the parents.' Appellant believed, however, that the child belonged to Wilson's youngest daughter. Although appellant and Wilson both lived in Houston at the time, appellant arranged to meet with Wilson in Dallas to take custody of the child. Appellant testified that she met with Wilson at a hotel on November 13, 1985, and that she took custody of the child. Appellant did not think this method of adoption was unusual. Appellant testified that she had tried normal adoption agencies, but that she had been turned down.

In the court of appeals, appellant claimed error in the trial court failing to instruct the jury on the law of mistake of fact. Appellant requested the following instruction:

A: You are instructed that it is a defense to prosecution that a person through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for the commission of the offense.
B: Reasonable belief means a belief that would be held by an ordinary and prudent man in the same circumstances as the Defendant.
C. Therefore, if you find from the evidence or have a reasonable doubt thereof that at the time Sue O. Miller was in possession of Mallory Sutton that Sue O. Miller acted under the belief that she had been given Mallory Sutton to be adopted, then you will find the Defendant Sue O. Miller not guilty of the offense alleged in the indictment.

The following then transpired between the trial court and defense counsel:

THE COURT: Okay. Inasmuch as she is charged not with receiving and concealing the baby, a stolen baby, but actually the evidence I have heard indicates she is charged with actually taking the baby, can you tell me how that request was raised by the evidence?
(DEFENSE COUNSEL): Because the whole—she does have a mistaken belief that she was in possession of—how she came into possession of the baby. She could not be a kidnapper if she came into possession of the baby that way. She could not have taken the baby and committed the acts alleged in the indictment if that possession came by way of this mistaken belief.
THE COURT: That request will be denied.

■ It is a defense to prosecution that the actor through mistake formed a reasonable belief about a matter of fact if his mistaken belief negated the kind of culpability required for commission of the offense. V.T.C.A. Penal Code, § 8.02(a). In the instant case, pursuant to its indictment the State elected to show that appellant intentionally or knowingly abducted the child by restraining her with intent to prevent her liberation by secreting or holding her in a place where she was not likely to be found. For purposes of this case, V.T.C.A. Penal Code, § 20.01 defines "restrain" to mean to restrict a person's movements without consent so as to interfere with a person's liberty, by moving him from one place to another. In turn, restraint is "without consent" if it is accomplished by any means when a parent or guardian has not acquiesced in the movement, where the child is less than 14 years of age. Therefore, the State was required to show that appellant intentionally or knowingly restrained the child without the consent of her parent or parents by moving her from one place to another or by confining her with the intent to prevent the liberation of the child by secreting or holding her in a place where she was not likely to be found. Without doubt, appellant was entitled to an instruction on the defense of mistake of fact if there was evidence that through mistake she formed a reasonable belief about a matter of fact and her mistaken belief would negate a conscious objective or desire to abduct the child by restraining the child without parental consent.

■ The court of appeals held that because appellant's defensive theory merely negated an element of the offense, no instruction was needed and concluded that the trial court did not commit error in failing to instruct the jury on the law of mistake of fact. *Miller*, 755 S.W.2d, at 214. We agree with appellant's contention that the court of appeals has misinterpreted the defense of mistake of fact. It is well-settled that as a general rule an accused has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence. *Hayes v. State*, 728 S.W.2d 804, 807 (Tex. Cr.App.1987). It is equally well-settled that an accused is thus entitled to that instruction whether the issue is raised by a defendant's testimony alone or otherwise. *Id.*

■ Clearly, appellant's testimony raised the issue of mistake of fact. As noted earlier, she testified that she had possession of the child with what she believed to be the child's natural parents' permission pursuant to an informal adoption. Thus, pursuant to her claimed understanding of the situation, appellant was not restraining the child without her mother's consent. When an accused creates an issue of mistaken belief as to the culpable mental element of the offense, he is entitled to a defensive instruction of "mistake of fact." *Willis v. State*, 790 S.W.2d 307, 314 (Tex. Cr.App.1990); *Hill v. State*, 765 S.W.2d 794, 797 (Tex.Cr.App.1989); *Woodfox v. State*, 742 S.W.2d 408, 409 (Tex.Cr.App. 1987). This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. *Woodfox*, 742 S.W.2d at 409. The giving of a proper instruction upon timely request and when raised by evidence in the case simply guarantees the jury the opportunity to make a fully informed decision, in turn meaning an individual duly convicted of an offense may have less of an opportunity to assault and temporarily subvert his otherwise valid conviction by means of pleading reversible error, thereby saving the State and defense the time and expense of protracted litigation of the same issues. Refusing such an instruction, properly raised, only delays justice. We hold that the trial court's refusal of appellant's properly raised requested jury charge instruction regarding mistake of fact was erroneous.

■ After finding error in the trial court's failure to submit appellant's requested charge on mistake of fact, we must determine if she has suffered "some

harm" from that error.[2] *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984). We must examine the relevant portions of the entire record to determine whether appellant suffered any actual harm as a result of the error. *Arline v. State*, 721 S.W.2d 348 (Tex.Cr.App.1986). Upon reconsidering the evidence and arguments at trial, we now conclude that appellant did suffer some harm from the erroneous denial of her properly requested jury instruction. The defense at trial was a combination of consent and alibi/mistaken identity.[3] Appellant was entitled to have the jury rule upon her mistake of fact defense as to consent and was harmed in not having her requested instruction submitted to the jury to guide it in it's determination of guilt.[4] We can not conclude that the mere combination of the defenses abated all of such harm.[5] Therefore, we hold that appellant suffered some harm from the erroneous denial of her requested jury instruction.

The judgment of the court of appeals is hereby reversed and the cause remanded to the trial court for proceedings not inconsistent with this opinion.

CLINTON, J., joins the opinion on the merits, but would remand to the court of appeals for a harm analysis in the first instance.

MALONEY, J.: Because I believe that the determination of whether or not it was error to refuse to charge on a defensive issue in itself constitutes a determination of whether or not the error was harmless, I concur only in the result.

2. Contrary to appellant's position in his Motion for Rehearing, harm is always an issue properly before this Court whenever error is discovered. Ultimately this Court would be called upon, either by appellant or the State, to make a determination of harm caused by the jury charging error in this cause. We can either make that determination now, as the cause is presently before us, or much later after review by the Court of Appeals. In the interests of the judicial efficiency of both this Court and the Court of Appeals, we choose to make that determination now.

3. Appellant disputed the child's mother's and grandmother's claims that she was the babysitter and claimed to have been elsewhere at the time which the mother testified to leaving the child with the babysitter.

CAMPBELL, J., dissents, believing that the opinion authored on original submission correctly found that the error was harmless under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1984), joined by MILLER and WHITE, JJ.

4. The jury charge as given allowed for conviction of kidnapping if the jury found that appellant's restraint of the child was without the mother's acquiescence even if it believed appellant's mistake of fact defense (i.e. that she had the mother's consent via the informal adoption). Appellant's requested mistake of fact instruction would have properly precluded the jury from such a conviction. Regardless of her claimed alibi defense, appellant was harmed by the jury being allowed to convict without regard to her mistake of fact claim.

5. Unless *all* harm was abated, appellant suffered "some" harm.