In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-02-00144-CR


______________________________




JOHNNY EARL SMITH, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 196th Judicial District Court


Hunt County, Texas


Trial Court No. 20,992




 




Before Morriss, C.J., Ross and Carter, JJ.


Opinion by Justice Ross



O P I N I O N



 Johnny Earl Smith appeals his conviction in cause number 20,992 in the 196th
Judicial District Court of Hunt County. A jury found Smith guilty of the offense of evading
arrest or detention with a vehicle. Tex. Pen. Code Ann. § 38.04 (Vernon 2003). The jury
also found Smith used a deadly weapon in the commission of the offense, and assessed
his punishment at ten years' imprisonment. (1) Smith contends the trial court erred in failing
to include in the jury charge an instruction on the defense of duress. 

 The evidence at trial, viewed in a light most favorable to the verdict, established the
following events. On January 7, 2002, Smith visited an automobile dealership in the town
of Quinlan. James Joseph, the manager of the dealership, recognized Smith as someone
with whom the business had dealt in the past and allowed Smith to test drive a 1994 Ford
extended cab pickup truck. Joseph informed Smith he was allowed to drive the truck three
miles in any direction away from the dealership. After some time, Joseph became
concerned that Smith had not returned from the test drive and he contacted the sheriff's
office, where the dispatcher advised Joseph to wait longer for Smith to return. Two days
later, the Quinlan police chief went to the dealership and, on being informed of Smith's
failure to return the vehicle, contacted the sheriff's department. The sheriff's department
sent Deputy Henry Thomas Grandfield to the dealership, where he took the report of the
missing vehicle. In his report, Grandfield noted Joseph described the truck as a 1994 black
Ford F-150 pickup truck with an extended cab, tinted windows, and a Texas license plate
number KR0284. Joseph also provided the vehicle identification number and a description
of the driver. 

 Approximately four hours after taking this report, and twenty-five miles away from
Quinlan, Grandfield observed in the City of Greenville what he believed to be the truck
Joseph reported as stolen. When Grandfield began following this vehicle, the driver
accelerated and began passing quickly through the fairly heavy traffic. Grandfield turned
on his vehicle's siren and emergency lights, and proceeded after the vehicle. Grandfield
testified that at times speeds during the three-mile chase reached seventy to eighty miles
per hour through town and that the driver of the pickup truck disregarded traffic signs and
signals throughout the pursuit. Finally, the truck was driven through a grassy field and onto
a parking lot, where the driver attempted to pass between two parked cars but failed,
crashing into one. Grandfield then arrested the driver, who verbally identified himself as
Johnny Earl Smith.

 Grandfield made arrangements to have the vehicle impounded and inventoried. 
James Frazier, an employee of a vehicle towing service, arrived to assist Grandfield. 
Because the front portion of the truck was now positioned on the hood of the parked car,
Frazier first removed the car from underneath the truck. He then entered the truck to
prepare it for towing and stepped on a hard object on the floorboard. There is some
dispute as to whether Grandfield or Frazier removed the cloth-covered object from the
floorboard. Grandfield testified Frazier brought him the object; Fraizer testified he simply
alerted the deputy, who then came and removed the object. Grandfield unwrapped the
object and discovered a sawed-off shotgun. 

 Smith presented testimony of a fellow inmate and Smith's sister to support his
contention that he was the victim of a conspiracy by dishonest law enforcement officials. 
Smith claimed he had been an informant in the past and that, by virtue of this involvement
with law enforcement, he had considerable information concerning these officials who were
conspiring to get him. He testified at the punishment phase of his trial that, because of his
knowledge, his life had been threatened and that he fled from Grandfield because he was
afraid. Smith requested that instructions on the issues of duress and necessity be included
in the jury charge. (2) The trial court rejected these requested instructions. 

 In addressing alleged error in a jury charge, the reviewing court must first determine
whether there is any error in the jury charge. Escobar v. State, 28 S.W.3d 767, 778 (Tex.
App.-Corpus Christi 2000, pet. ref'd). If not, then the court's inquiry ends, and it will find
no reversible error. See id. at 779. If the court does find error in the charge, then the next
step is to determine whether the accused properly objected to the proposed jury charge
or properly requested the instruction at issue. Ovalle v. State, 13 S.W.3d 774, 786 (Tex.
Crim. App. 2000); Almanza v. State, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on
reh'g). 

 The Texas Code of Criminal Procedure establishes two standards for jury charge
error, one that applies when an appellant timely objected to the omission or properly
requested the instruction and one that applies when an appellant made no objection or
request. Tex. Code Crim. Proc. Ann. art. 36.19 (Vernon 1981). If an accused did
preserve error by making a proper and timely objection to the exclusion, or by properly
requesting an instruction, then any error will be reversible unless the reviewing court
determines the error was harmless beyond a reasonable doubt. Jimenez v. State, 32
S.W.3d 233, 237 (Tex. Crim. App. 2000). In other words, when error is preserved, an
appellant need only show that some harm resulted from the error. Ovalle, 13 S.W.3d at
786; Almanza, 686 S.W.2d at 171.

 If, however, an appellant fails to make a proper objection to the omission, such
appellant invokes the fundamental error doctrine, and error will be reversible error only if
it causes "egregious harm." Jimenez, 32 S.W.3d at 238; Almanza, 686 S.W.2d at 171. 
To show egregious harm, the record must indicate the accused has not been afforded a
fair and impartial trial. Tex. Code Crim. Proc. Ann. art. 36.19. "Egregious harm" includes
errors impacting the foundation of the case, denying the accused a valuable right,
significantly affecting a defensive theory, or making the state's case for guilt clearly and
substantially more compelling. Hutch v. State, 922 S.W.2d 166 (Tex. Crim. App. 1996). 

 In assessing the degree of harm for these purposes, the reviewing court will
consider the entire jury charge, the state of the evidence, including the contested issues
and weight of the probative evidence, the argument of counsel, and any other relevant
information in the record. Almanza, 686 S.W.2d at 171. In its examination of the jury
charge in its entirety, the court should examine the workable relationship between the
abstract part of the charge and the application paragraphs. Escobar, 28 S.W.3d at 778. 
To rise to the level of egregious harm, the error must have led to actual harm to the
appellant or deprived him or her of a fair and impartial trial. See Rowden v. State, 696
S.W.2d 490, 491 (Tex. App.-El Paso 1985, no pet.). This means the appellant must point
to the specific location in the record where the court would find harm. Sanchez v. State,
722 S.W.2d 781, 785 (Tex. App.-Dallas 1986, pet. ref'd).

 We first determine whether there was error in the jury charge. The question
presented in this appeal is whether the omission of the instruction on duress was proper. 
For the following reasons, we hold the trial court properly denied the instruction on duress.

 Generally, in order to raise the affirmative defense of duress, an accused must first
admit committing the offense. See Willis v. State, 790 S.W.2d 307, 314 (Tex. Crim. App.
1990) (narrowing the overly broad proposition in Sanders v. State, 707 S.W.2d 78, 81 (Tex.
Crim. App. 1986), that an accused must always admit committing all elements of the
offense charged in order to avail himself or herself of the affirmative defense). At trial,
Smith denied having committed the offense of unauthorized use of a motor vehicle and
possession of a firearm as a felon. He presented testimony that he was an informant for
a law enforcement officer named Brad Oliver and very limited testimony concerning his
feelings of fear during the relevant time period. This is evidence from which one might
infer an admission that he did evade arrest. We are not persuaded, however, that such
a weak inference is sufficient to establish the affirmative defense of duress. 

 Smith's attorney admitted during closing argument Smith had evaded arrest. 
However, Smith's request for an instruction on duress came during the charge conference,
which was before the admission made by Smith's counsel in closing argument. At the time
of his request for the instruction, Smith had made no direct admission he evaded arrest. 
Further, Smith's counsel's statements in closing argument were not evidence.

 At the punishment phase of his trial, Smith maintained that he was set up "like a
bowling pin" and that someone had given him the truck and told him to take it from a lake
to an apartment complex. Smith did admit fleeing from Grandfield, which was an
admission of some culpability. This admission was made, however, during the punishment
phase and is not relevant to an instruction sought at the guilt/innocence phase of the trial.

 Even if we were to find that Smith established the procedural basis for asserting the
defense of duress, he cannot establish the substantive elements of the defense of duress.
Duress is an affirmative defense that applies when the accused "engaged in the proscribed
conduct because he was compelled to do so by threat of imminent death or serious bodily
injury to himself or another." Tex. Pen. Code Ann. § 8.05(a) (Vernon 2003). An imminent
threat has two elements of immediacy. Anguish v. State, 991 S.W.2d 883, 886 (Tex.
App.-Houston [1st Dist.] 1999, pet. ref'd). (3) First, the person issuing the threat must intend
and be prepared to carry out the threat immediately. Id. Second, carrying out the threat
must be predicated on that person committing the charged offense. Id.

 As a general rule, an accused is entitled to an instruction on any defensive issue
raised by the evidence, whether this evidence is strong or weak, unimpeached or
contradicted, and regardless of the trial court's opinion on the credibility of this evidence. 
Miller v. State, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991); Hayes v. State, 728 S.W.2d
804, 807 (Tex. Crim. App. 1987). If such testimony or other evidence, when viewed in a
favorable light, fails to raise the defense at issue, an instruction is not required. See Dyson
v. State, 672 S.W.2d 460, 463 (Tex. Crim. App. 1984); Cerda v. State, 557 S.W.2d 954,
957-58 (Tex. Crim. App. 1977).

 In support of his position that the issue of duress should have been presented to the
jury, Smith relies on evidence he was a confidential informant to law enforcement and his
testimony at the punishment hearing that he had been the target of several general threats
made by certain unidentified officers. He further directs us to the testimony of Charles
Parish, a jail inmate, that a jailer named "Officer Brown" gave him (Parish) handcuffs and
suggested he use the handcuffs to do violence to Smith. Parish testified Brown told him
that, should any issue arise regarding the encounter, he (Brown) would help Parish out and
back up a story of self-defense. Smith's sister testified Smith "stayed pretty nervous most
of the time" during the time period when Smith was arrested. 

 Smith's evidence concerning the conspiracy and its effect on his conduct did not
address the issue of an imminent threat of serious bodily injury or death. Even taking
Smith's version of the events as true, the evidence he presented at trial (4) is not sufficient
to raise the issue of duress. The record does not show that the people who made threats
to Smith intended or were prepared to carry out those threats immediately. Nor do we find
where Smith raised the issue that the threatened harm was conditioned on his evasion of
arrest. In order to sustain this argument, we would be required to conclude that the people
who made the threats forced Smith to flee from Grandfield or else they would do harm to
him. There is not sufficient evidence in the record to persuade us that such a bold
conclusion should be made. We conclude the evidence did not raise the issue of duress
and, therefore, the trial court's denial of the instruction was proper. 

 We affirm the judgment.


 Donald R. Ross

 Justice 


Date Submitted: June 19, 2003

Date Decided: July 17, 2003


Do Not Publish

1. [1]Smith successfully moved to try jointly cause numbers 20,991 (unlawful possession of a
firearm by a felon), 20,992 (evading arrest or detention), and 20,993 (unauthorized use of
a motor vehicle). The jury, having found Smith guilty in all three cases and having found
the enhancement paragraphs true, assessed punishment at thirty, ten, and five years,
respectively. The sentences in these three cases run concurrently.
2. [2]Smith refers to the defense of necessity only once in his brief, although at trial, he
submitted a written request for instructions on both duress and necessity. At oral
argument, Smith's counsel confirmed that Smith appeals only the denial of his requested
instruction on duress. 
3. [3]Anguish also provides another relevant aspect. The appellant in Anguish attempted to
extend the definition of "imminent threat" as it relates to Tex. Pen. Code Ann. § 8.05
(Vernon 2003) to include situations where the accused believes no law enforcement
agency will protect him. Anguish v. State, 991 S.W.2d 883, 887 (Tex. App.-Houston
[1st Dist.] 1999, pet. ref'd). The court specifically declined to adopt this definition. Id. 
Smith's contention on appeal somewhat resembles the argument in Anguish, and we agree
with its determination, finding the circumstances here outside the definition of "imminent
threat."
4. [4]Although we need not analyze Smith's testimony at sentencing to determine whether there
was error in the omission of an instruction in the jury charge at the guilt/innocence phase,
we note Smith's testimony offered little support for his position. He testified that "they"
pulled a gun on him and that "several people" told him they wanted him out of the way. 
Additionally, Smith testified that a former bail bond business owner, not the crooked
officers, told him about the threats. When asked to give more specific information
concerning the identity of the individuals who had threatened him, Smith was unable to do
so.