IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-0211-06






REBECCA ANN SHAW, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE TENTH COURT OF APPEALS


JOHNSON COUNTY





 Johnson, J., filed a dissenting opinion.


D I S S E N T I N G O P I N I O N



 The state's theory in this case was that appellant became frustrated with the crying of the young
victim and shook him or struck him, thereby inflicting the injuries that caused his death and thereafter
deciding to blame his injuries on her disabled daughter. Michael Gaudet, a detective in the sheriff's office
who had interviewed appellant at the hospital on the day of the injury, testified that he had asked appellant
if she had dropped Schuyler. She denied any such conduct. He testified that he then asked her who else
might have dropped Schuyler, and appellant related an incident two days earlier in which her disabled
daughter, Melissa, may have dropped Schuyler while appellant was out of the room. The officer also
testified that appellant told him that there were no apparent injuries, that he appeared to be uninjured, and
that he cried for a time, then "settled down." He did not testify as to any attempt by appellant to blame
Melissa for Schuyler's injuries.

 The state's medical evidence from four physicians indicated that there were no visible external
injuries or skull fractures, but the autopsy revealed diffuse swelling and hemorrhaging in the brain case of
a type that would cause symptoms in no more than six hours. The consensus of medical opinion was that
Schuyler's injuries supported a scenario in which Schuyler had been recently shaken, but did not comport
with a fall from a low height or an injury from two days before appellant's call to 911. Schuyler's medical
records included a report from a pediatric neurologist, who opined that at least part of the hemorrhaging
could have resulted from "aggressive" CPR.

 Appellant testified that Schuyler stopped breathing, that she called 911 for help, that the 911
operator coached her on how to administer CPR, and that she performed CPR on Schuyler as instructed
by the 911 operator. Her testimony on this issue was corroborated by the 911 audio tapes and the
testimony of the responding police officer.

 Her trial counsel questioned her about her conversation with Gaudet. She testified that he asked
her how Schuyler's head could have been bumped. She then related the incident with Melissa and
reiterated that Schuyler appeared uninjured. At no point in her testimony about her conversation with
Gaudet, or in Gaudet's testimony about his conversation with appellant, was there any assertion that
appellant stated or implied that the fatal injury was inflicted by Melissa. The only witness who took that
position was Donna Dyer, a jailhouse snitch.

 Appellant identified her job a "medical assistant," a position which may include certification, but
is not licensed by the State of Texas as a "healing art." (1) Her claim has always been that, if she injured
Schuyler, it was during her efforts to perform CPR, that she is not "licensed in the healing arts," and that
she was therefore entitled to a jury instruction on the Good Samaritan defense: "It is a defense to
prosecution under this section that the act or omission consisted of: . . . (B) emergency medical care
administered in good faith and with reasonable care by a person not licensed in the healing arts." Tex.
Penal Code § 22.04(k)(1)(B).

 Our precedent is consistent in saying that a jury instruction must be given on a defense that "is
raised by the evidence." "In determining whether the evidence raises the issue of a defensive charge, this
Court must consider all the evidence raised at trial, regardless of the strength of the evidence or whether
it is controverted." Reese v. State, 877 S.W.2d 328, 333 (Tex. Crim. App. 1994)(quoting Booth v.
State, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984). "This Court has consistently held that an accused
is entitled to an instruction on every defensive issue raised by the evidence. . . . This is true regardless of
whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial
court may or may not think about the credibility of this evidence. . . . It is also well settled that a
defendant's testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge. 
. . . This is particularly true when, as in the case here, appellant made a proper and timely request for such
a charge." Hayes v. State, 728 S.W.2d 804, 807 (Tex. Crim. App. 1987)(citations omitted). See also
Ferrel v. State, 55 S.W.3d 586, 591 (Tex. Crim. App 2001); Muñiz v. State, 851 S.W.2d 238, 254
(Tex. Crim. App. 1993)(evidence which raises the issue may be strong, weak, contradicted, unimpeached,
or unbelievable). "In determining whether any defensive charge should be given, the credibility of evidence
or whether it is controverted or conflicts with other evidence in the case may not be considered. When a
defensive theory is raised by evidence from any source and a charge is properly requested, it must be
submitted to the jury. . . . This rule is designed to insure that the jury, not the judge will decide the relative
credibility of the evidence. When a judge refuses to give an instruction on a defensive issue because the
evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the
evidence for that of the jury. The weight of evidence in support of an instruction is immaterial." Woodfox
v. State, 742 S.W.2d 408, 409-10 (Tex. Crim. App. 1987)(citations omitted.). See also Miller v. State,
815 S.W.2d 582, 585 (Tex. Crim. App. 1991). The court of appeals' statement that an "element of the
defense is 'raised' if, viewing the evidence in the light most favorable to the defendant, there is evidence
that a rational juror could accept as sufficient to prove that element"(emphasis added) is a far cry
from the consistent and long-standing standard in our case law: "it is well settled that a defendant's
testimony alone is sufficient to raise a defensive issue requiring an instruction in the jury charge" and that
this is true "regardless of whether such evidence is strong or weak, unimpeached or contradicted, and
regardless of what the trial court may or may not think about the credibility of this evidence." Our
precedent makes it abundantly clear that the evidence in support of the defense may be entirely
unbelievable and fantastic, but once that evidence is introduced, an instruction is required.

 Appellant testified that she administered CPR as instructed by the 911 operator, an action that
clearly falls under "emergency medical care." It was for the jury to decide whether the injuries resulted
from the CPR or from another source and, if from the CPR, whether the CPR was done in good faith and
with reasonable care. The trial court erred, as did the court of appeals, in finding that the defense was not
raised.

 Appellant was charged with two felonies, (1) manslaughter and (2) injury to a child, an offense that
may be any degree of felony from first-degree to state-jail felony depending on the extent of injury and
mens rea. The jury convicted appellant only of recklessly causing serious bodily injury, a second-degree
felony and the lowest degree that is possible for serious bodily injury. Because the jury determined that
Schuyler's injuries were not inflicted intentionally or knowingly, it is conceivable that the jury, had it been
told of the Good Samaritan defense, might have found for the appellant on that basis. Therein lies the harm
to appellant.

 Appellant was entitled to a charge on the Good Samaritan defense. She did not get such an
instruction and was harmed by its lack. The conviction should be reversed and the case remanded to the
trial court for a new trial. I respectfully dissent.

 

Filed: October 31, 2007

Publish
1. Medical assistant programs are generally taught in vocational schools and community and junior colleges
in one- (certification) or two-year programs (associate degree), but a medical assistant may be trained on the job. 
The duties are general and tend to office administration and minor medical procedures such as basic on-site
laboratory tests, recording vital signs, and administering medications as directed by a physician. Occupational
Outlook Handbook 2006-07, United States Department of Labor, Bureau of Labor Statistics Bulletin 2600,
www.bls.gov/oco/ocos164.htm. Medical assistants are not regulated by the Texas Occupations Code. Appellant's
description of her title and duties indicates that she falls into this job description and that she confused certification
with licensing. 

 Physicians assistants, on the other hand, are required by all states to complete an accredited education
program, usually affiliated with medical schools or four-year colleges, and to pass a national examination in order to
obtain a license. In Texas, physicians assistants are regulated under Tex. Occ. Code Ch. 204. They actually practice
medicine under the supervision of a physician. They are formally trained to provide diagnostic, therapeutic, and
preventative health care and may prescribe medication and assist during surgery. In rural areas, they may be the
principal health-care providers. Occupational Outlook Handbook 2006-07, United States Department of Labor,
Bureau of Labor Statistics Bulletin 2600, www.bls.gov/oco/ocos081.htm.